UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : Criminal No. 05-433-01 (JDB) |
| v. | : |
| CHARLES C. WIGGINS, | : |
| Defendant. | : |

**GOVERNMENT'S CONSOLIDATED MEMORANDUM IN AID OF
SENTENCING, MOTION FOR DOWNWARD ADJUSTMENT FOR ACCEPTANCE
OF RESPONSIBILITY, AND MOTION FOR DOWNWARD DEPARTURE**

The United States of America, by and through its counsel, the United States Attorney for the District of Columbia, hereby submits in the above-referenced matter this consolidated memorandum in aid of sentencing of defendant Charles C. Wiggins, motion for a three-level decrease for acceptance of responsibility, and motion for a downward departure under the United States Sentencing Guidelines ("USSG"), § 5K1.1. As will be discussed below, the government: (1) moves for a three-level decrease in defendant's offense level because defendant appropriately accepted responsibility; and (2) based on the defendant's substantial assistance to the government, moves under USSG § 5K1.1 for a downward departure. The government defers to the Court as to the appropriate amount of the downward departure and the resulting sentence.

A.  **FACTUAL BACKGROUND**

1. On December 7, 2005, the government filed a one-count Information charging defendant with bribery of public officials, in violation of 18 U.S.C. § 201(b)(1)(A). Presentence Investigation Report ("PSR"), at p. 3, ¶ 1. On January 4, 2006, defendant pled guilty to the Information. *Id.*, ¶ 3. Sentencing is now set before the Court on September 12, 2008, at 11:00 a.m. Sentencing previously was postponed to give defendant time to cooperate against others.

2. According to the statement of offense filed in this matter and the PSR, at pp. 3-5, ¶¶ 7-16, at all relevant times defendant operated a business known as Wiggins Telecommunications out of his home in Maryland. Wiggins Telecommunications was a computer company which installed and maintained computers.

3. Lorelle S. Dance[1] was employed as a business manager with the District of Columbia Public Schools ("DCPS"). Dance was responsible for buying goods and services for various elementary schools within the DCPS system.

4. Until December 31, 2002, George W. Smitherman, Jr.,[2] was employed by DCPS as a principal of one of the elementary schools within the DCPS system, Moten Elementary. Part of Smitherman's responsibilities as a principal was to manage the use of government-issued DCPS purchase cards and approve requests for the purchase of goods and services by Dance.

5. Defendant, through Wiggins Telecommunications, agreed, to perform computer installation services for DCPS. Dance and Smitherman were responsible, in their respective positions with DCPS, to approve work by defendant and his companies, and to approve payments to him.

6. In or about the fall of 2002, defendant, with the assistance of Dance, also created a shell company, Motts Sales and Services, through which defendant fraudulently billed DCPS, at the instruction of Dance, for custodial and computer-related goods and services.

7. From in or about 2001 until in or about 2003, defendant received, through Wiggins Telecommunications, more than $300,000 from DCPS in exchange for computer related work that

---

[1] In the Statement of Offense and PSR, Dance is referred to as "Individual #1."

[2] In the Statement of Offense and PSR, Smitherman is referred to as "Individual #2."

he performed for the DCPS system.

8. From in or about the fall of 2002 until in or about spring of 2003, defendant received, through his shell company Motts Sales and Service, more than $60,000 for services and goods allegedly provided to DCPS.

9. During the time period set forth in the prior two paragraphs, defendant paid to Dance and Smitherman approximately $49,332.47 in return for maintaining defendant's lucrative work arrangement with DCPS.

10. That is, defendant, directly and indirectly provided to Dance things of value, as set forth below, for her personal use in return for Dance agreeing to approve DCPS work and payments to Wiggins Telecommunications and shell company Motts Sales and Services:

| APPROXIMATE DATE OF RECEIPT BY DANCE | THING OF VALUE |
| --- | --- |
| September 2001 – February 2003 | $17,340.47 cash |
| November 15, 2002 | $1,217.00 personal check |
| December 2, 2002 | $7,000.00 cashier's check |
| December 4, 2002 | $4,000.00 cashier's check |
| December 20, 2002 | $3,000.00 cashier's check |
| January 3, 2003 | $2,000.00 personal check |
| January 17, 2003 | $ 900.00 personal check |
| January 31, 2003 | $ 500.00 personal check |
| April 17, 003 | $1,217.00 personal check |
| May 13, 2003 | $1,158.00 personal check |

11. Moreover, defendant, directly and indirectly provided to Smitherman things of value, as set forth below, for approving DCPS work and payments to Wiggins Telecommunications and shell company Motts Sales and Services:

| APPROXIMATE DATE OF RECEIPT BY Individual #2 | THING OF VALUE |
| --- | --- |
| December 20, 2002 | $5,000.00 cashier's check |
| December 23, 2002 | $4,000.00 cashier's check |
| January 2, 2003 | $2,000.00 personal check |

12. Between in or about 2001 and in or about 2003, in a continuing course of conduct, the exact dates being unknown, in the District of Columbia and elsewhere, defendant directly and indirectly did corruptly give and agree to give to public officials Dance and Smitherman something of value, that is, cash, cashier's checks, and personal checks, with the intent to influence Dance and Smitherman in their official acts, that is, preferential treatment in receiving opportunities to perform computer installation and services work for, and allegedly provide custodial goods to DCPS.

### B. SENTENCING FACTORS

Title 18, United States Code, Section 3553(a), provides numerous factors that the Court shall consider in sentencing a defendant. These factors are discussed below numbered as they are in Section 3553(a).

1. The Court should consider the nature and circumstances of the offense. Here, the offense was a corrupt attempt to obtain an unwarranted advantage for work opportunities by paying significant bribes to public officials. The offense negatively effected the integrity and perception of integrity of the D.C. government.

The Court should also consider the history and characteristics of the defendant. In this matter, defendant has a very limited and dated criminal record, PSR, at pp. 6-7, ¶¶ 32-35, and a somewhat, but not totally, consistent employment record. *Id.*, at p. 10, ¶¶ 53-58.

2. The Court should also consider the need for the sentence imposed (a) to reflect the

seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence; (c) to protect the pubic; and (d) to provide defendant with appropriate education or vocational training. In this matter, as discussed above, the offense was serious and requires adequate punishment. The sentence should also be of such a nature so as to deter others from engaging in similar conduct and to protect the public from other criminal acts by defendant. As to the final consideration, defendant does not appear to need further education or vocational training.

3. The Court should consider the kinds of sentences available. The maximum term of imprisonment for this offense is 15 years, with a term of supervised release of not more than 3 years. PSR, at pp. 11-12, ¶¶ 60 and 63.

4. The Court should also consider the sentencing range established by the United States Sentencing Guidelines ("USSG"). As to these guidelines, the probation officer believes, and the government concurs, that the defendant's resulting Total Adjusted Offense Level for the offense is 15, his Criminal History category is I, and his USSG range is 18 to 24 months.[3] PSR, at p. 6, ¶ 31, and p. 11, ¶ 61. Because the applicable guidelines range is in Zone D, the defendant, absent a departure, is not eligible for probation. *Id.*, at p. 12, ¶ 66. The applicable fine range is $4,000 to $40,000. *Id.*, at p. 13, ¶ 72.

5. The Court should consider any pertinent policy statement issued by the Sentencing Commission. The government is not aware of any pertinent statements beyond those captured in the

---

[3] The offense level of 15 includes a three-level reduction for acceptance of responsibility, both the two levels under USSG § 3E1.1(a), and an additional third level under USSG § 3E1.1(b). PSR, at p. 6, ¶ 30. In that defendant has complied with the terms of USSG § 3E1.1(b), the government does in fact move to grant the defendant the additional third level.

applicable Sentencing Guidelines range, which is discussed above.

6. Moreover, the Court should consider the need to avoid unwarranted sentencing disparities among defendants with similar records. Here, a guidelines sentence would help prevent such disparities between defendant and similar defendants.

7. Finally, the Court should consider the need to provide restitution. In this matter, restitution is not an issue because the loss to the District of Columbia government was an intangible one. *See* PSR, at p. 5, ¶ 17, and p. 13, ¶ 74.

### C. DEFENDANT'S LEVEL OF COOPERATION/ U.S. ATTORNEY'S OFFICE DEPARTURE COMMITTEE

In the plea letter in this case, there is standard language to the effect that defendant agreed to cooperate with the government. Plea Letter, at pp. 2-3, ¶ 5. The government, in return, agreed to advise its Departure Committee "of the full nature, extent, and value of the cooperation provided by [defendant] to the United States." *Id.*, at p. 4, ¶ 7. The government attorneys have complied with this obligation. The Departure Committee found that defendant provided substantial assistance in the investigation or prosecution of other persons and authorized a government motion for a downward departure under USSG § 5K1.1.

As the Court is aware from the trial of Smitherman in July, defendant cooperated with the government and provided substantial assistance.[4] Specifically, defendant testified in the grand jury regarding Dance and Smitherman and testified at the trial of Smitherman. After a very difficult and hotly contested trial, the jury acquitted Smitherman. Notwithstanding the verdict, undersigned

---

[4] The information discussed here was all made public at the Smitherman trial. The government believes the information contained herein is sufficient to advise the Court of defendant's cooperation. To the extent the Court needs additional information, the Government will, with the Court's permission, supply that at sentencing in an *in camera* presentation.

counsel is well aware of defendant's participation in long hours of preparation, the tenacity and courage that it took to testify and the grit and fortitude that was shown in the cooperation of defendant.

The Court saw, first hand, that the defendant did not exaggerate any facts, indeed, if anything, he may have slightly minimized Smitherman's participation – not to lie, but to be on the safe side of facts of which he might be unsure. Defendant had to supply facts to the jury that could have been much better told by co-conspirator Dance. Unfortunately, Dance refused to cooperate fully, and told multiple inconsistent statements during the investigation of these matters.

Defendant came forward relatively early in the investigation. Specifically, during a debriefing, defendant revealed that it was he and Dance who were responsible for the significant embezzlement of the hundreds and thousands of dollars, and when confronted about Smitherman, revealed that Smitherman, involved in more of a background role, was indeed given checks.

During the pretrial phase of these proceedings, defendant met with the prosecutors and agents on multiple occasions to prepare for his testimony. During these meetings, defendant was unfailingly cooperative, even though his testimony would reveal the fact that he has cooperated for decades with law enforcement – risking his own safety to himself and his family. Indeed, at trial, defendant was forced to admit that he has cooperated with the FBI, and was paid, despite the risk this might pose to him and his family. At trial, the cross-examination, which lasted for hours, exposed a myriad of facts about defendant's background which were embarrassing and humbling for defendant.

Defendant, as outlined above, provided "substantial assistance" which merits a reduction in sentence from the terms prescribed by the sentencing guidelines. Accordingly, the government

respectfully requests that the Court depart from the applicable sentencing guidelines range and impose a sentence below that range.

## D. RECOMMENDATION

Defendant acknowledged repeatedly paying bribes to Dance and Smitherman in return for maintaining his lucrative work arrangement with DCPS. This is serious conduct that needs to be adequately punished. Payment of or offering bribes to a public official is a corruption of a public service institution. Corruption by public officials in the District of Columbia, at whatever level, is a serious and, unfortunately, too often recurring matter. Corruption erodes the public confidence in government officials, employees and institutions. Citizens will accept a system they believe operates fairly, but not one that they do not believe does so. Moreover, although most public servants are honest and hard working, their morale is hurt by those who engage in or encourage corruption and their reputations suffer.

To his credit, however, once defendant was confronted by the investigators in this matter, he quickly admitted his illegal actions. Furthermore, he agreed to plead guilty pre-indictment. Finally, he cooperated against the others involved in his illegal activity, one of whom pled guilty subsequent to defendant pleading guilty and the other against whom defendant testified at trial

Accordingly, the government requests that the Court depart downward from the applicable sentencing guidelines range of 18-24 months. The government defers to the Court as to the appropriate sentence. This deference includes as to what amount of fine, if any, defendant should

pay.  *See* PSR, at pp. 10-11, ¶ 59 ("[b]ased on the financial profile of the defendant, he does not have the ability to a pay a fine").  As stated above, restitution is not an issue in this case.

        Respectfully Submitted,

        JEFFREY A. TAYLOR
        UNITED STATES ATTORNEY
        D.C. Bar Number 498610

By:      / s /
_____
JULIEANNE HIMELSTEIN
D.C. Bar # 417136
DANIEL P. BUTLER
D.C. Bar # 417718
ASSISTANT U.S. ATTORNEYS
555 Fourth Street, N.W.
Washington, D.C.  20530
 (202) 514-8203 and (202) 353-9431
Julieanne.Himelstein@USDOJ.Gov
Daniel.Butler@USDOJ.Gov

9